UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

NORBERT S.,[1]

                    Plaintiff,

     v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                    Defendant.

Case No.: 6:18-cv-00218-AC

OPINION AND ORDER

---

JOHN E. HAAPALA, JR.
401 E. 10th Ave., Suite 240
Eugene, OR 97401
     Of Attorney for Plaintiff,

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
District of Oregon
1000 SW Third Ave., Suite 600

---

[1] In the interest of privacy, this opinion and order uses only the first name and the initial of the last name of the non-governmental party in this case.

OPINION AND ORDER - 1

SARAH MARTIN
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104
      Of Attorney for Defendant

**ACOSTA**, Magistrate Judge:

Norbert S. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II the Social Security Act ("Act"). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* (doc. 4.) Based on a careful review of the record, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

## *Procedural Background*

Plaintiff applied for DIB on June 28, 2013, alleging a disability onset date as of April 15, 2011, due to chronic pain, right hip replacement, right shoulder replacement, gall bladder removal, partial intestine removal, left ankle injury, and depression. (Tr. 28, 232, 259.) His application was denied initially and upon reconsideration. (Tr. 105, 118.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and an administrative hearing was held on May 31, 2016. (Tr. 55-103.) ALJ Steven A. De Monbreum issued a decision finding Plaintiff not disabled on December 21, 2016. (Tr. 28-38.) The Appeals Council denied Plaintiff's request for review on December 14, 2017, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.) This appeal followed.

*Factual Background*

Born in 1958, Plaintiff was 52 years old on the alleged onset date. (Tr. 105, 118.) He completed high school and obtained an associate's degree in auto-mechanics. (Tr. 71, 115, 128, 260.) Plaintiff previously worked as supervisor and owner of an automobile repair shop. (Tr. 37-38, 260-61.)

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At step one, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, she is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either individually or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, she is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can perform past relevant work, she is not disabled; if she cannot, the burden shifts to the Commissioner.

At step five, the Commissioner must establish the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

*ALJ's Decision*

The ALJ performed the sequential analysis, as noted above. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 30.) At step two, the ALJ determined Plaintiff had the following severe impairments: history of a right hip replacement and shoulder replacement, chronic liver disease, avascular necrosis of the left

shoulder, osteoarthritis, and chronic obstructive pulmonary disease. (*Id.*) At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 32.)

The ALJ next determined Plaintiff had the residual functional capacity ("RFC") to perform "light work" with the following non-exertional limitations:

> [L]ifting 20 pounds occasionally and 10 pounds frequently; standing and/or walking about 6 hours total in an 8-hour day; sitting for about 6 hours total in an 8-hour day; and using the lower extremities occasionally. Reaching in the right upper extremity is restricted to occasional. Postural limitations included occasional climbing ramps or stairs; never climbing ladders, ropes, and scaffolds; frequently kneeling, balancing, and crouching; occasionally stooping or bending; and never crawling. He is to avoid exposure to more than occasionally dust, fumes, odors, chemicals, and gases.

(Tr. 33.)

At step four, the ALJ determined that Plaintiff was able to perform his past relevant work as a "supervisor garage" as "actually and generally performed." (Tr. 37-38.) Because the ALJ found Plaintiff could return to his past relevant work at step four, the ALJ did not reach step five. Accordingly, the ALJ concluded Plaintiff was not disabled under the Act. (Tr. 38.)

*Discussion*

Plaintiff argues the ALJ erred by: (1) failing to provide clear and convincing reasons for rejecting his subjective symptom testimony; and (2) improperly rejecting the medical opinions of physicians Rudolf Hoellrich and Robert Yeh.

I.    Plaintiff's Subjective Symptom Testimony

Plaintiff contends the ALJ failed to provide clear and convincing reasons for rejecting his subjective symptom testimony. To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo v. Berryhill*,

871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, absent affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony.[2] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.

At the hearing, Plaintiff testified he had a moderate activity level and exercised two to three times per week, taking "short walks, bending, [and] stretching" and using a three pound "free weight." (Tr. 69-70.) He explained that he can do household chores, such as washing his clothes and preparing meals, but requires "a lot of breaks" and must rest afterward. (Tr. 69, 78.) He testified he does not lift "over 20 pounds at a time." (Tr. 69.) Finally, he stated he loses his balance easily in the shower, making bathing difficult. (Tr. 78.)

---

[2] The court observes that on March 28, 2016, Social Security Ruling ("SSR") 16-3p became effective, and it eliminated the use of the term "credibility" and superseded SSR 96-7p.

In his function report, Plaintiff wrote that his pain interfered with his ability to dress, bathe, and wash his hair. (Tr. 283.) He noted that he cooks "T.V. dinners [and] sandwiches," but that they take him approximately one hour to prepare. (*Id.*) Plaintiff indicated that his pain limits his ability to: lift, squat, bend, stand, walk, kneel, climb stairs, and remember. (Tr. 286.) He wrote he can, with a cane, walk no more than 50 feet before needing to stop and rest. (*Id.*)

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. (Tr. 33.) Notably, Plaintiff failed to allege with specificity the subjective symptom testimony he believes the ALJ erroneously rejected. *See Lori S. v. Berryhill*, No. 6:17-cv-1267-SI, 2018 WL 4742511, at *5 (D. Or. Oct. 2, 2018). The court nevertheless examines the ALJ's reasoning below. Specifically, the ALJ offered three rationales for discounting Plaintiff's testimony: (1) his pain was controlled with medication; (2) his lack of seeking treatment suggested his symptoms were adequately controlled; and (3) his activities of daily living were inconsistent with his alleged limitations.[3]

### A.  Pain Mitigation with Medication

The ALJ discounted Plaintiff's testimony because medical records supported significant pain mitigation while taking medication. (Tr. 34.) Among the factors an ALJ should consider when evaluating a claimant's subjective symptom testimony is the effectiveness of medication. 20

---

[3] The Commissioner also argues the ALJ properly discounted Plaintiff's subjective symptom testimony because it contradicted medical opinion evidence in the record. The ALJ, however, did not raise that rationale in his evaluation of Plaintiff's testimony. Therefore, the court declines to address the argument. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

C.F.R. § 404.1529(c)(3)(iv) (instructing adjudicators to consider, *inter alia*, the "type, dosage, *effectiveness*, and side effects of any medication" an individual takes or has taken to alleviate pain or other symptoms) (emphasis added); *see also* SSR 16-3p, *available at* 2017 WL 5180304, *8 (same). Here, the ALJ highlighted records that showed Plaintiff's "[a]verage pain [was] 4/10 and [his] pain medication is able to alleviate at least 60% of [his] pain." (Tr. 379.); *see also* (Tr. 533-34 (reporting average pain was 3/10 and Plaintiff's pain medication is able to alleviate at least 70% of his pain).) This was a clear and convincing reasons to reject Plaintiff's testimony. *See Hauth v. Berryhill*, No. 3:16-cv-01003-AC, 2017 WL 4543786, at *4 (D. Or. Oct. 11, 2017) (finding "good pain control on medications" a clear and convincing reason to reject a claimant's subjective symptom testimony).

The court acknowledges Plaintiff's assertion that the "side effects" from his medications impaired "his mentation, memory, and ability to concentrate, as well as the contraindications from the combination of Plaintiff's medication regimen," citing a September 2011 treatment note. Pl.'s Br. 18 (citing Tr. 400–04.) But the ALJ properly rejected Plaintiff's testimony that he was unable to work while taking medications, finding "the records supported significant improvement" on medication. (Tr. 34.) For example, Plaintiff reported he was not experiencing "side effects" from his medications. (Tr. 379.); *see also* (Tr. 534 ("[Plaintiff] continues to see benefit with use of the pain medicines with no significant side effects.").) Indeed, in the same treatment note cited by Plaintiff the provider noted, a "recent neurology consultant . . . point[ed] out to [Plaintiff] that alcohol was probably playing a primary role in his 'memory problems,' but [Plaintiff] did not translate this into a need for him to stop drinking." (Tr. 401.) While variable interpretations of the evidence may exist, the ALJ's analysis was nonetheless reasonable, such that it must be upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). Accordingly,

this assertion does not invalidate the ALJ's clear and convincing reason for rejecting Plaintiff's testimony.

B.    *Lack of Surgical Intervention*

The ALJ discounted Plaintiff's testimony because he had only recently received "a referral back to orthopedics for shoulder pain." (Tr. 35.) The "lack of referral or significant intervention," reasoned the ALJ, supported the conclusion that Plaintiff's shoulder pain was "adequate[ly] controlled." (*Id.*) When evaluating a claimant's symptom testimony, an ALJ may consider a claimant's course of treatment for relief of pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(v) (instructing adjudicators to consider, *inter alia,* the "[t]reatment, other than medication," an individual receives for relief of pain or other symptoms); *see also* SSR 16-3p, *available at* 2017 WL 5180304, *8 (same). Here, the ALJ discounted Plaintiff's testimony that his shoulder pain was disabling based on the lack of surgical referrals in the record. This was proper. *See Romero v. Colvin,* 2014 WL 585348, at *9 (C.D. Cal. Feb. 13, 2014) (affirming ALJ's rejection of symptom testimony, finding the claimant's "symptoms and limitations were not as severe as he alleged" based in part on the "lack of [a] more aggressive and consistent treatment or even a referral to a specialist"); *see also Chou Yang v. Astrue,* 2012 WL 2065040, at *4 (E.D. Cal. June 7, 2012) (affirming ALJ's rejection of symptom testimony based in part on the consideration of a claimant's "lack of referrals for pain clinics or physical therapy").

Plaintiff asserts that his primary care provider referred him for an orthopedic evaluation prior to his date of last insured. Def.'s Br. 18 (citing (Tr. 535[4])). That Plaintiff was referred out

---

[4] Plaintiff's citation to page 535 of the administrative record does not reveal a referral to an orthopedic specialist. Page 538 of the record, however, does contain a referral to an orthopedist in the context of evaluating Plaintiff's shoulder. Accordingly, the court will assume Plaintiff intended to cite page 538 of the record.

for, and ultimately had, shoulder surgery does not undermine the ALJ drawing the rational inference that his pain, up until 2015, was "adequately controlled." *See Batson*, 359 F.3d at 1193 (an ALJ's findings must be upheld if they are "supported by inferences reasonably drawn from the record"); *see also* (Tr. 35.) Indeed, a review of the treatment note in its totality reveals that Plaintiff's increased shoulder pain was a recent development. At the appointment, Plaintiff reported that his shoulder "pain was worse," indicating that prior to that appointment his pain levels were tolerable, which supports the ALJ's conclusion that Plaintiff's shoulder pain was not disabling. (Tr. 35, 536.) Although plaintiff presents his own interpretation of the evidence, the ALJ's finding was a rational interpretation of the record and, therefore, must be upheld. *Batson*, 359 F.3d at 1193.

C.    *Activities of Daily Living*

The ALJ discounted Plaintiff's symptom testimony based on his activity level. (Tr. 34.) Activities of daily living may discount a claimant's testimony in two ways: (1) where a claimant is able to perform activities indicating capacities that are transferrable to a work setting; or (2) where a claimant's activities contradicts his symptom testimony. *Molina*, 674 F.3d at 1113.

The ALJ noted that Plaintiff retained the ability to "engage in yardwork," and required assistance only for heavier tasks. (Tr. 34.) The ALJ discussed Plaintiff's moderately active lifestyle, which included exercise up to three times per week. (Tr. 35.) The ALJ also noted that Plaintiff was able to engage in most household activities, grocery shop, and go for walks. (Tr. 34, 36.); *see also* (Tr. 379 ("[Plaintiff] is able to get out and do shopping and some activities, although his neighbor is helping him with heavier duty housework.").) Finally, the ALJ highlighted the tension between Plaintiff's alleged difficulties bending and stooping and his ability to garden. (Tr. 36.)

Plaintiff asserts that "the records do not indicate how long he was able to sustain" gardening activities, and that he required assistance mowing his yard. Pl.'s Br. 18. The court is unpersuaded for at least two reasons. First, the ALJ's decision specifically noted that Plaintiff "required assistance with heavier housework," presumably including mowing Plaintiff's yard. (Tr. 34.); *see also* (Tr. 530 ("[Plaintiff] reports being able to take care of self and even does gardening, but has hired people for mowing.").) Second, and more importantly, the ALJ identified specific evidence in the record that contradicted Plaintiff's subjective complaints and discounted his testimony accordingly. *Compare* (Tr. 286 (self-reporting limitations bending and the ability to walk no more than 50 feet)), *with* (Tr. 34 (ALJ's decision discussing Plaintiff engaging in yardwork, gardening, household chores, and exercising).) Although Plaintiff may prefer an alternative interpretation of this evidence, the "ALJ is responsible for determining credibility . . . and for resolving ambiguities." *Garrison*, 759 F.3d at 1009 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court concludes that the ALJ did not err in rejecting Plaintiff's testimony based in part on his daily activities. *See Carr v. Colvin*, No. 6:13-cv-00521-PK, 2014 WL 3475056, at *5 (D. Or. July 11, 2014) (rejecting reports of "back and shoulder problems" based on reports of daily activities including maintaining a small garden, completing laundry, sweeping, shopping, occasionally cooking, and washing dishes).

In sum, the court concludes the ALJ supplied clear and convincing reasons supported by substantial evidence to reject Plaintiff's subjective symptom testimony. The ALJ is affirmed as to this issue.

II.    Medical Opinion Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. To reject the uncontroverted opinion

of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Garrison*, 759 F.3d at 1012; *Ghanim*, 763 F.3d at 1161. "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.'" *Tommasetti*, 533 F.3d at 1041 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Specific and legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or internal inconsistency. *Tommasetti*, 533 F.3d at 1041; *Andrews*, 53 F.3d at 1042-43; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-03 (9th Cir. 1999)

A.     *Treating Physician: Robert Yeh, M.D., D.O.*

Dr. Yeh provided medical statement regarding Plaintiff's physical abilities and limitations. (Tr. 522-25.) Dr. Yeh opined that Plaintiff could: stand up to 15 minutes at any one time and could not stand at all in the context of an eight hour work day; sit up to 60 minutes at any one time and could sit up to 60 minutes in the context of an eight hour work day; occasionally lift 20 pounds and frequently lift 10 pounds; occasionally bend and manipulate bilaterally; occasionally operate foot controls in the work context; and constantly operate a motor vehicle. (Tr. 522-23.) He opined that Plaintiff was precluded from overhead reaching bilaterally, stooping, or working around dangerous equipment. (Tr. 523.) He noted that, during an eight-hour work day, Plaintiff would

need to frequently elevate his legs, that he would be less productive than his peers, and that he would miss two or more days per month because of conditions. (*Id.*)

The ALJ adopted some of the limitations noted in Dr. Yeh's opinion in crafting Plaintiff's RFC, but rejected others portions of the opinion because: (1) the doctor's limitations conflicted with medical records; (2) the doctor's limitations conflicted with Plaintiff's activities of daily living; and (3) the opinion was internally inconsistent. *See* (Tr. 36.)

Because Dr. Yeh's opinion was contradicted, the ALJ was required to give a specific and legitimate reason for rejecting it. *See Bayliss*, 427 F.3d at 1216 (the contradicted opinion of a treating or examining physician can be rejected with specific and legitimate reasons that are supported by substantial evidence).

    1.    Inconsistency with medical records

A "conflict between treatment notes and a treating provider's opinion may constitute an adequate reason to discredit the opinion of a treating physician." *Tiffany W. v. Comm'r, Soc. Sec. Admin.*, No. 3:17-cv-0855-AC, 2018 WL 7051031, at *3 (D. Or. Nov. 7, 2018) (citing *Ghanim*, 763 F.3d at 1161), *adopted*, 2019 WL 236718 (D. Or. Jan. 16, 2019); *see also Tommasetti*, 533 F.3d at 1041 (noting that incongruence between a doctor's opinion and a claimant's medical records is a specific and legitimate reason to reject the opinion).

The ALJ sufficiently highlighted numerous treatment notes that conflicted with Dr. Yeh's opined limitations to reject the opinion. (Tr. 35-36.) For example, despite the doctor's extreme standing and bending limitations, the ALJ cited February 2012 treatment records, which indicated Plaintiff had normal strength in all four limbs and engaged in "weight training." (Tr. 36 (citing Tr. 392.).) The ALJ also cited another treatment note that showed largely unremarkable assessments, normal strength in all four limbs, and that Plaintiff's pain was largely controlled with

medication. (*Id.* (citing Tr. 381.)) The ALJ highlighted similar reports from 2014, as well as treatment notes indicating Plaintiff had normal mobility and engaged in activities that conflicted with Dr. Yeh's bending limitation. (*Id.* (citing Tr. 527, 528, 530-31, 534-35, 540-41.)) Further, despite Dr. Yeh's conclusion that Plaintiff would need to frequently elevate his legs throughout the workday, the ALJ cited numerous treatment notes that identified a lack of swelling in Plaintiff's lower extremities, and only two instances of relatively mild swelling. (Tr. 363-73, 379-410.) Although Plaintiff argues the ALJ "cherry-picked" the record and offers his own interpretation of the medical evidence, variable interpretations are insignificant when the Commissioner's interpretation is a rational reading of the record. *See Batson*, 359 F.3d at 1193. The inconsistencies identified by the ALJ were specific and legitimate reasons to reject Dr. Yeh's opinion.

2.     Internal inconsistency and activities of daily living

The ALJ supplied two additional specific and legitimate reasons to reject Dr. Yeh's opinion: an internal inconsistency and inconsistencies between Plaintiff's reported activities and the doctor's opined limitations. (Tr. 35-36.) An inconsistency within a doctor's opinion can constitute a specific and legitimate reason to reject it. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (explaining that internal contradiction is a specific and legitimate reason for rejecting a treating physician's opinion). Here, the ALJ highlighted a specific limitation in Dr. Yeh's opinion that was inconsistent with another portion of the doctor's assessment: the doctor's opined limitation that Plaintiff could operate foot controls only "occasionally" conflicted with the doctor's finding that Plaintiff could operate a motor vehicle "constantly." (Tr. 36.) As such, this was an additional specific and legitimate reason to reject the opinion. *See Adame v. Berryhill*, No. 6:16-cv-1761-PK, 2017 WL 6947878, at *9 n.7 (D. Or. Nov. 29, 2017) (noting a doctor's opined limitation that the claimant "could sit only two hours of an eight-hour work day contradicted [the

doctor's] conclusion that [the claimant] retained the ability to operate a motor vehicle 'constantly'" and was a sufficiently specific and legitimate reason to reject the opinion), *adopted*, 2018 WL 443462 (D. Or. Jan. 12, 2018).

The ALJ also found Plaintiff's reported activities were inconsistent with Dr. Yeh's opinion. (Tr. 36.) Inconsistency between a treating provider's opinion and a claimant's daily activities can constitute a specific and legitimate reason to discount that opinion. *Ghanim*, 763 F.3d at 1162 (citing *Morgan*, 169 F.3d at 600-02). As previously discussed, the ALJ noted Plaintiff "reported engaging in gardening" which the ALJ found "inconsistent" with Dr. Yeh's bending and stooping limitations. (Tr. 36.) Plaintiff again advances an alternative interpretation of the medical evidence, but as the Ninth Circuits has instructed: "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198. Thus, the opinion's internal inconsistency, as well as inconsistencies between Plaintiff's reported activities identified by the ALJ, constitute additional specific and legitimate reasons to reject Dr. Yeh's opined limitations.

### 3. Plaintiff's remaining contentions

Plaintiff argues that as a primary care provider, Dr. Yeh's opinion must be "given greatest weight under the rules" and cites from the "Purpose" preamble to SSR 96-2p, which states: "If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted." SSR 96-2p, *available at* 1996 WL 374188 (July 2, 1996).[5] The actual text of SSR 96-2p, however, instructs

---

[5] The court notes that the Commissioner rescinded SSR 96-2p on March 27, 2017, but only for claims filed on or after that date. *See* Rescission of SSRs 96-2P, 96-5P, and 06-3P, *available at* 2017 WL 3928298 (March 27, 2017). Because Plaintiff filed his claim before March 27, 2017, the ALJ was required to analyze Plaintiff's application pursuant to SSR 96-2p.

adjudicators that a "treating source's opinion cannot be entitled to controlling weight" when the opinion is "'inconsistent' with other 'substantial evidence' in the individual's case record." *Id.* at *2. As noted, the ALJ identified multiple inconsistencies between Dr. Yeh's opinion and the record. As such, the ALJ was under no obligation to give Dr. Yeh's opinion "controlling weight."

Plaintiff also asserts that the ALJ failed to consider the factors set forth in 20 C.F.R. § 404.1527(c)(2), which instructs adjudicators evaluating medical opinions to consider, *inter alia*: the length of the treatment relationship, frequency of examinations, nature and extent of the treatment relationship, the supportability and consistency of the opinion, the specialization" if any of the provider, and any "[o]ther factors . . . that tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c) (effective Aug. 24, 2012 through Mar. 26, 2017).[6] The argument is unavailing.

The regulations do not require the ALJ to exhaustively discuss each factor individually. Rather, the ALJ need only consider them. *See* 20 C.F.R. § 404.1527(c). The ALJ did so here. For example, the ALJ expressly considered the length of the treating relationship, noting Dr. Yeh's medical statement "failed to identify the number of years" the doctor had treated Plaintiff. (Tr. 36.) The ALJ then examined the medical record and independently found that Dr. Yeh's treating relationship began in December 2011, which inherently required evaluating the length, frequency, and nature of the treatment relationship. (*Id.*) The ALJ also discussed numerous treatment notes,

---

[6] In support of this proposition Plaintiff also cites *Trevizo v. Berryhill*, 862 F.3d 987, 1005 (9th Cir. 2017). The court notes that the Ninth Circuit later withdrew the opinion Plaintiff cites and amended it on denial of rehearing. *See Trevizo*, 871 F.3d at 668 ("The opinion filed on July 10, 2017 is amended, and an amended opinion is filed."). Further, the court notes that the Commissioner has promulgated new regulations for evaluating medical opinion evidence for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. However, for claims filed before March 27, 2017, the regulations at 20 C.F.R. § 404.1527 continue to apply. Accordingly, the court has applied 20 C.F.R. § 404.1527 to this appeal.

spanning 2011 to 2015. (*Id.*) Finally, the ALJ highlighted numerous conflicts between the opinion and medical records, which conflicts bear upon both the lack of supportability and the lack of consistency of the opinion with the record. It is clear to the court the ALJ considered the regulatory factors set forth in 20 C.F.R. § 404.1527(c). As such, Plaintiff's argument lacks merit.

In sum, neither of Plaintiff's contentions demonstrate the ALJ erred in his weighing of Dr. Yeh's opinion. As discussed above, the ALJ supplied multiple specific and legitimate rationales supported by substantial evidence for rejecting Dr. Yeh's opinion. The ALJ is affirmed as to this issue.

      *B.*     *Surgeon and Orthopedist: Rudolf Hoellrich, M.D., D.O.*

Plaintiff assigns error to the ALJ's weighing of the opinion evidence supplied by Dr. Hoellrich in 2015 and 2016, which concluded that Plaintiff was disabled. Notably, not every statement by a medical source constitutes a medical opinion. *See Lee v. Colvin*, 80 F. Supp. 3d 1137, 1146 (D. Or. 2015). A medical source's conclusory statement that a claimant is "disabled" or "unable to work" does not bind the Commissioner because the final determination about a claimant's disability is ultimately reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). In such circumstances, however, the ALJ is still required "to consider the opinion" and provide and provide legally sufficient reasons for its rejection. *See Kennedy v. Comm'r of Soc. Sec.*, No. 6:17-cv-00988-HZ, 2018 WL 2724055, at *8 (D. Or. June 6, 2018). Here, because both the May 2015 and December 2016 opinions conflict with other opinions in the record, the ALJ was required to provide specific and legitimate reasons to reject them. (Tr. 112-16, 125-29.); *Garrison*, 759 F.3d at 1012; *Ghanim*, 763 F.3d at 1161.

\ \ \ \ \

\ \ \ \ \

1.    May 2015 opinion

Dr. Hoellrich served as Plaintiff's orthopedist and operated on Plaintiff in 2009 and 2016. *See, e.g.,* (Tr. 357, 493, 580.) Dr. Hoellrich did not supply any functional limitations, but wrote in a May 2015 treatment note that Plaintiff was unable to perform his past work as a mechanic:

> At this point, the patient is clearly disabled from work as an auto mechanic on a permanent basis due to multiple joint replacement status.

(Tr. 491.) The ALJ assigned "no weight" to the May 2015 opinion for essentially three reasons: (1) whether an individual is disabled is finding reserved for the Commissioner; (2) the opinion summarily stated plaintiff was disabled; and (3) the opinion did not address any specific restrictions or evidence.

The ALJ's first rationale, standing alone, is not an independently sufficient reason to reject the opinion. An "ALJ may not simply reject a treating physician's opinions on the ultimate issue of disability." *Ghanim*, 763 F.3d at 1161. The ALJ's additional rationales, however, were specific and legitimate reasons to reject the opinion.

First, the conclusory nature and lack of supporting clinical findings was a specific and legitimate reason to reject the opinion. *See Bray*, 554 F.3d at 1228 (an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (quotation marks omitted); *see also* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). A review of the treatment note in which the doctor's opinion appears, moreover, reveals that Plaintiff presented with largely unremarkable clinical findings. For example, Plaintiff had normal rotator cuff strength in his left shoulder, and while he presented with some weakness in the right shoulder, the doctor noted a "complete loss of function

[did] not exist." (Tr. 490.) Further, the doctor noted that he had "reasonably good external rotation strength" and that there was "[n]o obvious instability in either shoulder." (*Id.*) Although Plaintiff offers an alternative interpretation of the medical evidence, even where the "evidence before the ALJ is subject to more than one rational interpretation, [reviewing courts] must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198.

Second, the lack of specificity as to concrete functional limitations was also a specific and legitimate reason to reject the opinion. *Johnson*, 60 F.3d at 1432 (affirming rejection of opinion that the claimant "was disabled for all practical purposes," finding the opinion "was conclusory because it included no specific assessment of her functional capacity"); *Tingey-Jewell v. Astrue*, No. 3:09-cv-1074-KI, 2010 WL 5419012, at *6 (D. Or. Dec. 23, 2010) (affirming rejection of opinion that the claimant was "clearly unable to work" reasoning that it "was a vocational opinion, and not a medical opinion within" the physician's expertise because the opinion "did not address medical issues such as specific functional limitations or diagnoses" and "did not identify work related activities that [the claimant] could not perform").

Finally, the conflict between the doctor's conclusion that Plaintiff was "clearly disabled" and the doctor's own treatment notes was an additional reason to reject the opinion. *See Tiffany W.*, 2018 WL 7051031, at *3 (explaining that a "conflict between treatment notes and a treating provider's opinion may constitute an adequate reason to discredit the opinions of a treating physician"). Despite Dr. Hoellrich's May 2015 opinion that Plaintiff was "clearly disabled," the ALJ noted that less than one month later an ultrasound of Plaintiff's right shoulder that "suggested only mild bursitis and tenosynovitis but no tear found and a recommendation for physical therapy." (Tr. 35 (citing Tr. 512.).)

\ \ \ \ \

2. December 2016 opinion

In December 2016 — nearly six months after the administrative hearing — Dr. Hoellrich wrote a letter in support of Plaintiff's disability claim. (Tr. 44-45.) The letter discussed Plaintiff's 2016 right-shoulder surgery as well as a "tentatively planned" 2017 left-shoulder surgery. The 2016 letter also failed to describe concrete functional limitations; however, the doctor wrote that Plaintiff's "conditions caused ongoing pain and limited use of the shoulders and hips"; he had "chronic limitations to his activities because of his previous joint replacements in the right shoulder and right hip"; during the course of medical interventions Plaintiff had "multiple periods where he was unable to work for extended periods of time"; his conditions "affected the pace at which he could work"; and "[t]here were many times during the recovery from multiple surgeries that [Plaintiff] was not even able to do basic sedentary work[.]" (Tr. 44.) Dr. Hoellrich then reached a conclusion similar to that expressed in his May 2015 treatment note:

> [I]t is not expected that [Plaintiff] will be physically fit to perform the type of work he did previously due to permanent lifting restrictions and activity restrictions associated with joint arthroplasty. Ongoing issues with pain would also potentially impact his ability to do even sedentary work as long periods of inactivity and sitting or standing in one position often aggravate joints that have arthritis and have been replaced.

(Tr. 45.) The Appeals Council denied Plaintiff's request for review and found that the December 2016 letter "[did] not relate to the period at issue. Therefore it [did] not affect the decision about whether [Plaintiff was] disabled beginning on or before December 31, 2015." (Tr. 1-2.)

Plaintiff asserts the ALJ's failure to address the December 2016 opinion constitutes reversable error because the ALJ did not explicitly reject the opinion. The reason the ALJ did not explicitly comment on the opinion is self-evident: the letter was submitted to the Appeals Council after the ALJ issued his decision. *See* (Tr. 6, 38, 44-45, 334.) The Commissioner maintains that

"[a]lthough the Court cannot review the Appeals Council's decision, *see Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012), the Court may consider new evidence added to the record when determining whether the ALJ's conclusion was supported by substantial evidence." Def.'s Br. (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1451-52 (9th Cir. 1993)). The issue, however, is more nuanced.

The Ninth Circuit has applied varying levels of scrutiny to Appeals Council action. In some scenarios, the Ninth Circuit has found a jurisdictional bar precludes review; in others, review was appropriate based on the Appeals Council's failure to follow the Commissioner's own regulations. *See, e.g., Brewes*, 682 F.3d at 1161 ("We have held that we do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action.") (citation omitted); *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011) ("Where the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider its decision in light of the additional evidence.").

Under the Commissioner's prior regulation, the Appeals Council was required to "consider" additional evidence so long as that the evidence was new, material, and related to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b) (effective through January 16, 2017). This led to a series of decisions that distinguished evidence the Appeals Council formally "considered" and made part of the administrative record, and therefore subject to judicial review (*see Brewes*, 682 F.3d at 1162 ("the final decision of the Commissioner includes the Appeals Council's denial of review, and the additional evidence *considered* by that body is 'evidence upon which the findings and decision complained of are based'") (emphasis added) (quoting 42 U.S.C. § 405(g)), from evidence the Appeals Council "looked at," which did not

become part of the formal administrative record, *see, e.g., Amor v. Berryhill*, 743 F. App'x 145, 146 (9th Cir. 2018) ("here the Appeals Council only *looked at* the evidence, and determined it did not meet the standard for consideration," therefore, "the new evidence did not become part of the record, and we may not consider it") (emphasis added). *See also Ruth v. Berryhill*, No. 1:16-cv-0872-PK, 2017 WL 4855400, *8-9 (D. Or. Oct. 26, 2017) (discussing the implication of the Appeals Council *looking at* new evidence as opposed to *considering* it).

In January 2017, however, the Commissioner promulgated a new regulation that substantially modified how the Appeals Council examines evidence submitted after the administrative hearing. *See* 20 C.F.R. § 404.970 (effective January 17, 2017).[7] Pursuant to that

---

[7] The regulation, in relevant part, provides:

    (a) The Appeals Council will review a case if —

        (1) There appears to be an abuse of discretion by the administrative law judge;
        (2) There is an error of law;
        (3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence;
        (4) There is a broad policy or procedural issue that may affect the general public interest; or
        (5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

    (b) The Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence as described in § 404.935 because:

        (1) Our action misled you;
        (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
        (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to . . . [.]

regulation, the Appeals Council now "will only *consider* additional evidence" where a claimant "show[s] good cause for not informing [the Agency] about or submitting the evidence" to the ALJ prior to the hearing. 20 C.F.R. §§ 404.970, 404.935 (emphasis added). In other words, the regulation shifts the burden to the claimant to satisfy the "good cause" requirements of section 404.970(b)(1)-(3) before the Appeals Council is required to "review" the case "if [it] receives evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5).

Here, because the Commissioner updated the regulations governing the Appeals Council's procedures while Plaintiff's claim was pending, *see* 81 FR 90987-01, *available at* 2016 WL 7242991, the Commissioner waived the "good cause" requirement for Plaintiff's application, *see* (Tr. 18-19.) Therefore, the Appeals Council was required to consider the evidence Plaintiff submitted in its review of the case, and that "consideration" is subject review by the court. *See West v. Berryhill*, 2019 WL 362259, at *5 (D. Haw. Jan. 29, 2019) ("Section 404.970(b) requires the Appeals Council to consider additional evidence if good cause is shown, and, here, the Appeals Council found good cause," as stated in a letter to the claimant).

Although the "Notice of Appeals Council Action" is not a model of clarity, the Appeals Council appropriately evaluated Plaintiff's new evidence as required by the regulations. In denying Plaintiff's request for review regarding Dr. Hoellrich's December 2016 letter, the administrative appeals judge explained that Plaintiff's "additional evidence [did] not relate to the period at issue." (Tr. 2.) That rationale is among the relevant factors section (a)(5) requires the

---

20 C.F.R. § 404.970(a)-(b).

Appeals Council to weigh when determining whether to grant review. 20 C.F.R. § 404.970(a)(5). Moreover, an independent review of the letter confirms the gravamen of the doctor's discussion relates to the period after December 31, 2015, and the references to Plaintiff's condition after "multiple medical interventions" fail to supply any specific period he was "unable to work."[8] (Tr. 44.); *see also* 20 C.F.R. § 404.970(a)(5) ("The Appeals Council will review a case if . . . the Appeals Council receives additional evidence *that relates to the period on or before the date of the hearing decision*[.]") (emphasis added).

In sum, neither the ALJ nor the Appeals Council erred in rejecting the opinion evidence supplied by Dr. Hoellrich in 2015 and 2016. As discussed above, the ALJ supplied multiple specific and legitimate rationales supported by substantial evidence for rejecting Dr. Hoellrich's 2015 opinion and the Appeals Council properly considered the 2016 opinion in declining to review the ALJ's decision. The ALJ is affirmed as to this issue.

*Conclusion*

Based on the foregoing, the Commissioner's decision denying Plaintiff's application for DIB is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED

DATED this ___11th___ day of June, 2019.

JOHN V. ACOSTA
United States Magistrate Judge

---

[8] Indeed, although the letter discusses surgeries in 2007 and 2008, Plaintiff's earning records indicate he worked at substantial gainful levels all four quarters of both of those years. (Tr. 239-40.); *see also* 42 U.S.C. § 423(d)(1)(A) ("The term "disability" means . . . *inability to engage in any substantial gainful activity* by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last *for a continuous period of not less than 12 months*[.]") (emphasis added).